UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.L.D.M., | No. 1:25-cv-01906-DJC-JDP |
| Petitioner, | |
| v. | ORDER |
| MOISES BECERRA, et al., | |
| Respondents. | |

Petitioner E.L.D.M. is presently in Immigration and Customs Enforcement ("ICE") custody. He moves for a temporary restraining order and for leave to proceed under a pseudonym. For the reasons discussed below, the Motions are granted.

## BACKGROUND

Petitioner E.L.D.M. is a citizen of Brazil who entered the United States without inspection. (Petition ("Pet.") (ECF No. 1) ¶ 13.) Petitioner allegedly entered the United States in July 2005. (E.L.D.M. Decl. (ECF No. 4-4) ¶ 2.) He has been present in the United States for over 20 years and lives with his wife and U.S. citizen son in San Pablo, California. (Pet. ¶ 13.) Petitioner was arrested on November 19, 2025, outside of his home by ICE authorities who were looking for another person. (*Id.* ¶¶ 13, 20; E.L.D.M. Decl. ¶ 10.) Petitioner has never been arrested before nor had contact with immigration authorities. (Pet. ¶ 13.) Petitioner's wife suffers from mental health

1  challenges including bipolar disorder and schizophrenia. (*Id.*) She is unable to have a
2  full-time job, so the family relies on Petitioner as the primary breadwinner. (*Id.*)
3  Petitioner's wife takes medication for her conditions. (E.L.D.M. Decl. ¶ 6.) Petitioner's
4  son is finding it difficult to concentrate on school and has lost significant weight during
5  Petitioner's detention. (Pet. ¶ 13.) Petitioner also suffers from various medical issues,
6  including high blood pressure and diabetes. (*Id.*)

7  Petitioner is currently detained at Mesa Verde ICE Processing Center. (*Id.* ¶ 19.)
8  On December 17, 2025, Petitioner filed a Petition for Writ of Habeas Corpus and a
9  Motion for Temporary Restraining Order (Mot. TRO (ECF No. 4)). He also filed a
10 Motion for Leave to Proceed under Pseudonym, which is unopposed. (Mot.
11 Pseudonym (ECF No. 3).) The Motion for a Temporary Restraining Order is fully
12 briefed. (Opp'n (ECF No. 8); Reply (ECF No. 9).)

## LEGAL STANDARD

14 The standards for issuing a temporary restraining order and a preliminary
15 injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush &*
16 *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief,
17 Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable
18 harm in the absence of preliminary relief; (3) that the balance of equities tips in his
19 favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def.*
20 *Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious
21 questions going to the merits' – a lesser showing than likelihood of success on the
22 merits – then a preliminary injunction may still issue if the 'balance of hardships tips
23 *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for*
24 *the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).

## DISCUSSION

26 **I. Leave to Proceed under Pseudonym**

27 The Court grants Petitioner's request to proceed under a pseudonym. "The
28 normal presumption is that parties must use their real names." *Doe v. Kamehameha*

*Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010); *see also* Fed. R. Civ. P. 10(a) ("[t]he title of the complaint must name all the parties"); Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). However, it is common for courts to permit parties to proceed under a pseudonym "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature[.]" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (cleaned up and citations omitted) (holding "that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity").

Petitioner has sufficiently alleged the sensitive and highly personal nature of his request, which concerns his and his family members' medical privacy. (*See generally* Pet.) Petitioner also agrees to disclose his identity to Respondents, thus the prejudice to Respondents appears to be minimal. (Mot. Pseudonym at 2–3.) Nor have Respondents opposed Petitioner's request. Finally, the public's interest in open judicial proceedings is not meaningfully impaired as Petitioner does not seek to seal records or take other action beyond using a pseudonym for his name. (*Id.* at 4.) After considering the factors described by the Ninth Circuit in *Does I*, the Court finds that good cause is met as the public's interest in knowing Petitioner's identity is outweighed by his need for anonymity. Accordingly, Petitioner's request to proceed under a pseudonym is GRANTED.

**II. Preliminary Injunction**

Respondents have indicated that they do not oppose treating the motion for a temporary restraining order as a motion for a preliminary injunction. (Opp'n at 2.) Therefore, the Court considers whether a preliminary injunction is warranted.

**A. Likelihood of Success on the Merits**

Petitioner is likely to succeed on the merits of his claim that he has been unlawfully detained under 8 U.S.C. § 1225 and is instead subject to 8 U.S.C. § 1226.

Respondents concede that Petitioner is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, ---F.R.D.---, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). In *Bautista*, the district court certified a nationwide bond eligible class defined as follows:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* The district court noted that the Department of Homeland Security's policy renders all of the bond eligible class subject to mandatory detention under § 1225(b)(2) and found that, under this policy, "the putative class members have been deprived of their right to a bond hearing under § 1226(a)." *Id.* at *8.

Notwithstanding Petitioner's membership in the bond eligible class, Respondents maintain that he remains subject to mandatory detention under § 1225(b)(2). (Opp'n at 9–15.) As it has done before, the Court will address the statutory argument in full. Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States. However, Section 1225 provides for mandatory detention of certain individuals, while Section 1226 establishes a discretionary detention scheme. Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). In contrast, under Section 1226's discretionary scheme, a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C § 1226(a). Pending this decision, the Attorney General may continue to detain the arrested individual or may release the individual on bond or conditional parole. 8 U.S.C § 1226(a)(2)(A)–(B). Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (explaining that under

"§ 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final"). "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community." *Bostock*, 779 F. Supp. 3d at 1256.

Though discretionary detention is the "default rule" under Section 1226, there are exceptions to Section 1226's discretionary scheme. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Id.* at 289. Under Section 1226(c), the "Attorney General shall take into custody any [noncitizen] who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* (citing 8 U.S.C. § 1226(c)(1)) (internal quotation marks omitted).

This Court agrees with Petitioner that he is likely subject to Section 1226(a)'s discretionary detention scheme rather than Section 1225(b)(2)'s mandatory detention scheme and, therefore, is entitled to a bond hearing. Respondents argue Petitioner is an "applicant for admission" within the meaning of Section 1225. (Opp'n at 8.) This argument reflects a recent executive branch policy change directing federal immigration officials to seek expedited removal of a larger swath of noncitizens by classifying all noncitizens present in the United States as "applicant[s] for admission" under Section 1225. *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1–4 (N.D. Cal. Sept 12, 2025), describing this policy change).

This Court rejects Respondents' argument and finds that the applicability of these provisions is governed by when and where a noncitizen encounters immigration enforcement officials. Courts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to those already living within the United States. *See, e.g.*, *Bostock*, 779 F. Supp. 3d at

1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025).  This interpretation of these provisions is further supported by the canon against surplusage, a recent Supreme Court decision, and longstanding agency practice.

*First*, this interpretation is supported by the canon against surplusage.  As explained above, Section 1226(c) creates a class of exceptions to Section 1226(a)'s "default" rule of discretionary detention.  *See Jennings*, 583 U.S. at 288.  Under Section 1226(c), those who have committed certain offenses are subject to mandatory detention.  *See* 8 U.S.C. § 1226(c).  For example, Section 1226(c) requires detention of a noncitizen who is inadmissible, that is "present in the United States without being admitted or paroled," and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" specified criminal offenses.  *See* 8 U.S.C. § 1226(c)(1)(E); § 1182(a)(6)(A)(i).  Section 1225 requires detention of "applicant[s] for admission."  8 U.S.C. § 1225(b)(2)(a).  If the government is correct that the term "applicants for admission" extends to all inadmissible noncitizens there would be no reason for Section 1226 to require detention of particular classes of inadmissible noncitizens.  Therefore, the government's argument would render the whole of Section 1226(c) surplusage.

Respondents' interpretation of these provisions would similarly render recent amendments to this statute surplusage.  In 2025 Congress enacted the Laken Riley Act, which added additional categories of individuals to those subject to mandatory detention under Section 1226(c).  It would make little sense for Congress to enact these amendments subjecting new individuals to mandatory detention if they were

6

already subject to such detention pursuant to Section 1225.  *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025) (explaining that "assuming any inadmissible noncitizen is an 'applicant for admission' who is 'seeking admission' (and, therefore, subject to mandatory detention under § 1225(b)(2)), would render the Riley Laken Act unnecessary").  At a minimum, Congress' enactment of the Laken Riley Act, which clearly contemplated that § 1226 applies generally to undocumented individuals who have been living in the United States, would constitute Congressional acquiescence in that longstanding interpretation of Sections 1225 and 1226.  *See, e.g., United States v. Mays*, 430 F.3d 963, 967 (9th Cir. 2005).

*Second*, this interpretation of the statute is consistent with the Supreme Court's recent description of these provisions in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). In *Jennings*, the Supreme Court explained that "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.  The Supreme Court described proceedings under Section 1225 as a process that "generally begins at the Nation's borders and ports of entry, where the government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.  "Then, when discussing Section 1226, *Jennings* describes it as governing 'the process of arresting and detaining' noncitizens who are living 'inside the United States' but 'may still be removed,' including noncitizens 'who were inadmissible at the time of entry.'" *Bostock*, 779 F. Supp. 3d at 1258 (quoting *Jennings*, 583 U.S. at 288).

*Third*, this interpretation is consistent with longstanding agency practice.  Until recently, the Department of Homeland Security ("DHS") consistently treated noncitizens apprehended while living in the United States as detained under Section 1226(a).  *See Bostock*, 779 F. Supp. 3d at 1258, 1260–61; *C.A.R.V.*, 2025 WL 3059549,

7

at *5. Executive Branch regulations implementing these provisions issued just six months after their enactment provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond determination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). As this interpretation "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time," this "longstanding practice of the government–like any other interpretive aid –can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up).

As Petitioner has been present in the United States for 20 years (Pet. ¶ 13; E.L.D.M. Decl. ¶¶ 2–3), he is likely to succeed on the merits of his claim that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision. *See J.A.C.P.*, 2025 WL 3013328, at *7 (holding petitioner was likely to succeed on the merits of their claim that they were not subject to mandatory detention under section 1225(b)(2)(A) under similar circumstances); *Bostock*, 779 F. Supp. 3d at 1261 (same). Therefore, Petitioner is likely to succeed on the merits of his claim that he is subject to the procedures laid out by and entitled to the rights afforded under Section 1226(a), most notably, a bond hearing.

**B. Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of a preliminary injunction. Petitioner suffers from various medical issues: high blood pressure, diabetes, and anxiety, takes medication for these conditions and "normally receive[s] regular treatment for these issues." (E.L.D.M. Decl. ¶ 8.) The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Additionally, Petitioner's wife and son are separately struggling with their health conditions, and the family faces financial peril. (E.L.D.M. Decl. ¶¶ 6–7, 11.) Petitioner

"suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018).  The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995.  Petitioner has thus established irreparable harm.

### C. Balance of the Harms & the Public Interest

The final two *Winter* factors merge when the government is the nonmoving party.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).  "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members."  *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the interests of equity and the public weigh in favor of Petitioner.  Petitioner's wife and son are harmed by his continued detention.  A preliminary injunction also inflicts minimal harm to the government.  Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here.  This Order instead furthers that interest through application of the correct law.  Finally, this relief benefits the public.  "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue."  *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).  There also appears to be no dispute as to Petitioner's risk of flight or danger to the community.  For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay

9

the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner E.L.D.M.'s Motion for Temporary Restraining Order (ECF No. 4) is converted to a Motion for a Preliminary Injunction and hereby GRANTED;
2. Petitioner E.L.D.M. shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner unless Respondents provide no less than seven (7) days' notice to Petitioner and hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond is considered, and Petitioner may have his counsel present;
4. This Order shall remain in effect until the resolution of this action or until otherwise ordered by the Court; and

5. This matter is referred to the assigned Magistrate Judge for all further proceedings.

Dated:  December 22, 2025        /s/ Daniel J. Calabretta
         THE HONORABLE DANIEL J. CALABRETTA
         UNITED STATES DISTRICT JUDGE